[Civ. No. 16226. Second Dist., Div. Two. May 21, 1948.]

DANIEL W. FAGAN, Respondent, v. UNION PACIFIC RAILROAD COMPANY, Appellant.

E. E. Bennett, Edward C. Renwick, Malcolm Davis for Appellant.

Hildebrand, Bills & McLeod and D. W. Brobst for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff, after trial before a jury, in an action to recover damages under the Federal Employers' Liability Act [34 Stats. 65], 45 U.S.C.A. section 51, defendant appeals.

The record discloses the following pertinent facts:

On March 14, 1946, plaintiff was a brakeman employed by defendant and was injured while performing his duties on a lumber spur track at the Bridal Veil Lumber Company at Bridal Veil, Oregon, under the following circumstances: The track on which the accident occurred extends in a general easterly and westerly direction, with a curve to the right, or north. At the time of the accident a movement was being made in a westerly direction on the lumber mill spur track. The engine was facing westerly, shoving five freight cars ahead of it. The most westerly, or lead car, was to be stopped at the west end of the spur track. To reach the point where this car was to be stopped it was necessary for the five cars to be shoved over a ramp crossing of the lumberyard. Defendant provided special instructions concerning this crossing which required that this particular place must be protected by a member of the crew preceding any movement across the roadway. There was also a rule of defendant

company which required that when a brakeman, riding a car and giving signals which controlled the movement of the car, passed out of the sight of the other trainmen the movement of the train must be stopped immediately. At the westerly edge of the roadway there was a structure that caused impaired clearance and it was not possible to ride the side of a boxcar past that point. It was therefore necessary for a brakeman who was required to ride the side of the lead car on approaching this point to crawl from the side of the car onto the front end sill of it. The roadway was about 14 feet wide.

Plaintiff was instructed by the conductor to have the car shoved down the spur and to spot the lead car at "21," and that was all he had to do, since he had told both foremen at the Bridal Veil Lumber Company that the move was to be made. The conductor did not station one of the trainmen at the roadway but instead told the plant foremen and relied on them to keep the crossing clear. As the engine started to move the cars westerly on the spur track at position "21," plaintiff rode on the ladder on the side of the west end of the lead car. As the move proceeded, plaintiff, as he rode the car, was out of the vision of the engineer, so it was necessary to station another man at a point about halfway between plaintiff and the engineer. The man stationed there was Mr. Apperson, whose duty it was to relay signals from plaintiff to the engineer. When the lead car was about 40 feet from the ramp crossing plaintiff gave a slow signal so that he might have the opportunity of climbing around on the front end of the car. This signal was not obeyed or acted upon by the engineer. The train continued at its then speed of about 4 or 5 miles an hour. After giving the signal, plaintiff started to climb around onto the front end of the car and in doing so he went completely out of sight of the other trainmen. The train was not stopped immediately as required by the rule hereinbefore mentioned. It is conceded that had the engineer observed the rule, the train, at the speed at which it was then traveling, could have been stopped almost instantly.

At about this time a hoister owned by the lumber company came on to the ramp, moving backward with a heavy load of lumber. Although the operator set his brakes, the hoister continued slipping down the ramp and hit the side of the lead car, causing personal injuries to plaintiff.

QUESTIONS PRESENTED FOR DETERMINATION

█ First: *Was there substantial evidence to sustain the implied finding of the jury that defendant was negligent?*

This question must be answered in the affirmative. It is conceded that a rule of defendant company required that a train be immediately stopped when a brakeman, riding a car and giving signals which controlled the movement of the train, passed out of sight of other trainmen. It is likewise conceded that in the present case plaintiff who was riding on the lead car was giving signals controlling the movement of the train; that he passed out of view of other trainmen; that also the train could have been immediately stopped; and that had it been stopped in accordance with this rule the accident would not have occurred. Therefore one of the proximate causes of the accident was the violation of the rule by defendant. This fact alone constitutes sufficient evidence to sustain the implied finding of the jury that the negligent act of defendant was the proximate cause of plaintiff's injury. (*Underwood* v. *Louisville & N. R. Co.,* 131 F.2d 306, 307 [writ of certiorari denied Feb. 8, 1943. See 318 U.S. 760 (63 S.Ct. 559, 87 L.Ed. 1133)].) Further discussion of the evidence would not serve any useful purpose. (*Thatch* v. *Livingston,* 13 Cal.App.2d 202, 203 [56 P.2d 549].)

█ Second: *Was the negligent act of defendant a proximate cause of the injury?*

This question must likewise be answered in the affirmative. It may be conceded that the operator of the hoister was also negligent and that his act of negligence was also a proximate cause of plaintiff's injury. However, the rule is settled that if an injury is caused by the concurrent effect of two separate wrongful acts, each is a proximate cause of the injury and neither can operate as an efficient intervening cause with regard to the other, and that neither party can escape liability so long as his own negligent act is one of the proximate causes of the injury. (*Taylor* v. *Oakland Scavenger Co.,* 17 Cal. 2d 594, 602 [110 P.2d 1044].)

█ Since the trial jury found, supported by substantial evidence, that defendant's wrongful act was a proximate cause of the injury, and that the hoister driver's negligent act was not an efficient intervening cause with regard to defendant's act, such finding cannot be disturbed by this court. (*Springer* v. *Sodestrom,* 54 Cal.App.2d 704, 710 [129 P.2d 499].)

■ Third: *Did the trial court commit prejudicial error in sustaining an objection to testimony which would have disclosed a statement relative to how the accident occurred, made by the driver of the hoister 15 minutes after the accident?*

This question must be answered in the negative. Clearly the statement of the driver of the hoister made 15 minutes after the accident occurred was not part of the res gestae. It was clearly hearsay and not binding upon defendant. (*Kimic v. San Jose-Los Gatos etc. Ry. Co.*, 156 Cal. 379, 391 [104 P. 986]; *Willard v. Valley Gas & Fuel Co.*, 171 Cal. 9, 16 [151 P. 286].) Therefore the trial court's ruling was correct.

Fourth: *Did the trial court commit prejudicial error in instructing the jury?*

This question must likewise be answered in the negative. Defendant concedes that the individual instructions read to the jury correctly state the law, but contends that in some of the instructions the word "employee" referred to plaintiff, while in other instructions it referred to coemployees of plaintiff, thereby confusing the jury. The answer to this contention is found in defendant's brief wherein it says, "The difficulty associated with making a persuasive argument upon the point here presented is that the error committed is so obvious as to negative [negate] its existence." Clearly if the alleged error was nonexistent, under article VI, section 4½ of the Constitution, it could not be prejudicial and must be disregarded by us. We are satisfied that the instructions were correct and did not contain any prejudicial error.

The judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.